# In the United States District Court
# for the District of Utah, Central Division

| | |
|---|---|
| DIATECT INTERNATIONAL CORPORATIONS, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ORGANIC MATERIALS REVIEW INSTITUTE, a Delaware nonprofit corporation,<br><br>Defendant. | **ORDER**<br><br>Case No.  2:05 CV 00465 |

  This matter is before the Court on defendant Organic Materials Review Institute's ("OMRI") Motion for Summary Judgment.  OMRI claims that plaintiff ("Diatect"), in agreeing to be bound by their Operating Manual for Review of Brand Name Products ("Operating Manual"), is foreclosed from bringing suit in this Court because the manual contains a broadly-worded forum selection clause which requires that "any action against OMRI must be filed in Lane County, Oregon."  OMRI Manual at 31.  Diatect contends that the operating manual, including the forum selection clause, was an illusory promise that cannot be enforced as a contract.  This Court agrees that the Operating Manual may be illusory, but finds that Diatect, having adhered to the manual for years and received the benefit of the agreement they had with OMRI, is now equitably estopped from claiming that the contract is invalid.

## FACTS

  OMRI is a nonprofit organization that reviews a variety of products for compliance with the U.S. Organic Food Production Act.  OMRI reviews products which are

submitted by various companies and, for a fee, they analyze whether the product may be certified as organic. If OMRI finds that the product meets the act's requirements, they list the product on their "Brand Name Products List." Products that pass their review may also use OMRI's certification mark and seal on packaging and advertisements. To regulate their process, OMRI binds itself to perform according to an Operating Agreement which details the listing, de-listing, and appeals process the company will follow.

In 2001, Diatect sought OMRI certification for its Diatect V insecticide. After a period of review, OMRI listed the product in May of 2001. Diatect subsequently agreed to extend their listing each year from 2002 through 2004. In each written instrument in which the parties agreed to continue the listing, Diatect agreed to be bound by OMRI's Operating Manual. The manual allowed Diatect to change operation terms as it saw fit at any time without any comment or input from the companies that listed their products with OMRI. Additionally, the manual contained a forum selection clause which required that all suits brought against OMRI must be litigated in Lane County, Oregon.

In 2004, OMRI received a formal complaint from a third party which alleged that Diatect V did not meet the threshold requirements to be listed as organic. Pursuant to the Operating Manual, OMRI requested information from Diatect within thirty days. Diatect, however, took advantage of a provision in the Operating Manual which allowed them to request more time to prepare a response. OMRI assented to Diatect's request. However, Diatect was required either to submit the requested information within thirty days or proffer an adequate explanation for its failure to do so. Diatect did neither. Therefore, OMRI delisted Diatect V on September 28, 2004.

Diatect formally appealed this decision pursuant to the Operating Manual. In its formal notice of appeal, Diatect quoted directly from the Operating Manual, and agreed to pay a fee as required by the manual. After OMRI's Review Panel concluded that Diatect's appeal letter did not set forth sufficient facts to overturn OMRI's initial decision, Diatect was given more time to provide information needed to determine whether or not Diatect V met the listing criteria.

Diatect again failed to proffer the requested information and again looked to the Operating Manual for assistance. On January 27, 2005, Diatect submitted another Formal Notice of Request for Time Extension. OMRI again granted the request. However, when that extension expired on March 15, 2005 without any additional information being provided, OMRI denied Diatect's fourth request for a time extension. Diatect filed suit shortly thereafter.

### STANDARD OF REVIEW

Summary Judgment is appropriate if all the evidence viewed in the light most favorable to the nonmoving party fails to create any "genuine issue of material fact." Fed. R. Civ. P. 56©. All reasonable inferences must be drawn in favor of the nonmoving party. *Jeffries v. St. of Kansas*, 147 F.3d 1220, 1228 (10th Cir. 1998). If there is no disagreement over "facts that might affect the outcome of the case," summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). Additionally, "[a] federal court sitting in diversity must apply the substantive law of the forum state. . . ." *Vitkus v. Beatrice, Co.*, 127 F.3d 936, 941 (10th Cir. 1997).

## ARGUMENT

**I.     OMRI'S FORUM SELECTION CLAUSE WILL BE ENFORCED BECAUSE DIATECT ACCEPTED THE CONTRACT CLAUSE ON FOUR SEPARATE OCCASIONS AND RECEIVED BENEFITS THEREFROM.**

Although OMRI's operating agreement provided unfettered power to amend the rules under which it would certify products, the contract - including the forum selection clause - should still be enforced because Diatect is equitably estopped from challenging its validity.

*A.     The OMRI Operating Manual Appears to be Illusory.*

All contracts must be supported by consideration.  In addition, for consideration to be adequate, it must –at the very least–bind both parties to perform an "act or forebear from doing that act."  *Resource Management Co. v. Weston Ranch and Livestock Co.*, 706 P.2d 1028, 1036 (Utah 1985) (citations omitted).  Therefore, "when there exists only a facade of a promise, i.e., a statement made in such . . . conditional terms that the person making it commits himself to nothing, the alleged 'promise' is said to be 'illusory.'  An illusory promise neither binds the person making it, not functions as consideration. . . ."  *Peirce v. Peirce*, 994 P.2d 193, 199 (Utah 2000).  Therefore, illusory promises are devoid of consideration and cannot form the basis of bilateral contracts.  *Id*.

Utah courts, however, disfavor this doctrine.  "When it appears that the parties intended a contract . . . courts find implied promises to prevent a party's promise from being performable merely at the whim of the promisor."  *Id*. (citations omitted).  Additionally, as the *Resource Management* court further indicated, parties to an allegedly illusory contract are still subject to the covenant of good faith and fair dealing.  *Resource Management Co.*, 706 P.2d at

4

1037. Therefore, Utah courts imply a term in each contract to prevent either party from engaging in "arbitrary action by one party that disadvantages the other." *Id*.

In the case at bar, this Court determines that OMRI's operating manual is illusory in nature because it granted the company *carte blanche* to edit any portion of the manual at any time. Diatect suggests that five provisions in OMRI's Operating Manual render the forum selection clause illusory and therefore void. The first provision relied upon by Diatect is in the introduction to the Operating Manual, wherein OMRI states: "please note that the OMRI Operating Manual . . . [is] subject to change at any time at OMRI's discretion." (Def.'s Memo in Supp., Ex. 2 at 1). Diatect also points out that OMRI also retains absolute unilateral discretion to alter the Operating Manual's provisions dealing with documentary requirements, review policy, third-party complaints, and de-listing of organic products. However, none of these provisions specifically refer to the forum selection clause at issue in this case.

In *Peirce*, the court could reinterpret the contract at issue by accepting a different definition of a word so as to support consideration "through a process of reinterpretation." *Peirce*, 994 P.2d at 199. In this case, however, the five phrases in the OMRI contract unambiguously allow OMRI to unilaterally change its policies in its sole discretion. As a result, a reviewing Court cannot cure the contract's illusory language without reading additional terms into the instrument, which would necessarily contradict the plain meaning of the other phrases. The instant case is more similar to the situation discussed in *Dumais v. American Golf Company*. 299 F.3d 1216 (10th Cir. 2002). In that case, the Tenth Circuit interpreted two contracts referred to in sections of an Employment Handbook in which employees agreed to be bound during their employment. The Tenth Circuit determined that the contracts were illusory because the

employer could "unilaterally modify the terms at any time."[1]  *Id*. at 1218-1219.  The same defect exists in the OMRI Operating Manual.

> B. *Notwithstanding the Illusory Nature of the Operating Manual, it is an enforceable agreement because of the conduct of the parties.*

In its Supplemental Brief in Opposition to Summary Judgment, Diatect does not contend that there was no agreement between the parties.  Rather, it suggests that this Court should enforce "the essence" of the agreement between the parties.  Diatect claims that "the essence" can be found in oral conversations between two representatives of the companies wherein an OMRI agent purportedly "agreed that if Diatect met OMRI's standards (which existed at the time of the agreement) and paid a fee that OMRI would then list Diatect's product and allow it to use the OMRI seal." (Pl. Supp. Br. in Opp. 23).  Diatect then contends that if this Court enforces the entire written agreement, it could be prevented from bringing suit in any forum.  Finally, Diatect claims that OMRI would be able to completely control the terms of the agreement.  *Id.* at 23.  This, they claim, because the Court would be placing its "seal of approval" on an illusory contract.

Notwithstanding Diatect's arguments above, for several years Diatect requested that their product be listed and <u>agreed to be bound by and continuously approved the Operating Manual which it now protests</u>.  The phone conversation that occurred in 2001 between agents of the litigants broadly outlined the mutually agreeable aspects of the process that was more fully explicated in the Operating Manual.  **(**Def.'s Supp. Memo. in Supp. 1).  At that time, Diatect agreed to be bound by the manual.  Additionally, after the conversation, Diatect agreed in writing

---

[1] Diatect argues that this case is inapplicable because the court did not apply Utah law. However, this Court is persuaded that the pertinent New Mexico common law that led the court to believe that all sections of a handbook that can be modified by one party at any time are illusory is entirely consistent with the majority and Utah approaches to the issue.

to be bound by the agreement three more times and only complained that it was illusory after OMRI delisted Diatect's product.

Diatect's claim that the alleged discussion between the agents of the two companies forms the basis for a separate, enforceable agreement must be rejected under Utah law. In Utah, "evidence of prior or contemporaneous . . . discussion is not admissible to contradict the terms of the written instrument." *The Cantamar, L.L.C. v. Champagne*, 92 P.3d 768, 772-773 (Utah Ct. App. 2004). Therefore, as OMRI correctly argues, the conversations can only be used to imply additional terms into the written instrument. Moreover, Diatect's own characterization shows that the conversation only reiterated the manual's terms and policies for listing. Accordingly, under Utah law–which strongly favors implying terms to cure illusory contracts–this Court could not imply an inconsistent term from the conversation between the parties because even accepting the evidence in the light most favorable to Diatect, the conversations only reiterated the parties' intention to be bound by the Operating Manual.

Diatect also contends that the conversations, which mirrored the manual's quid pro quo but did not specifically reference the contract's illusory elements, could evidence the existence of a separate contract or term which this Court could enforce independent of the forum selection clause. However, as noted, extrinsic evidence of conversations between the parties cannot be used to contradict terms of a written instrument. *Id*. If this Court enforces Diatect's creative interpretation, it would have to cancel not only the forum selection clause, but also the terms of the operating agreement as to which Diatect agreed to be bound. Undisputed evidence showed that Diatect followed the manual's terms, not only the alleged "essence" set forth in oral conversations. For instance, after its product was delisted, Diatect filed a "formal notice of appeal" that quoted directly from the now supposedly illusory Operating Manual. It also paid the

appeal fee required in the manual and cited directly to the manual during the operating process. Therefore, despite its contentions to the contrary, this Court finds that Diatect intended to be bound by the manual.

>  C.  *Assuming without deciding that the Operating Manual was illusory, this Court will enforce it because Diatect is equitably estopped from challenging its validity.*

Utah courts routinely prevent one party from claiming that a contract is invalid if they accept that contract's benefits. *Swan Creek Village Homeowners v. Warne*, 134 P.3d 1122, 1129 (Utah 2006). Diatect is equitably estopped from denying the validity of the contract which bound the parties to the Operating Manual because they engaged in "conduct . . . which [led the other party] in reliance thereon, to adopt a course of action resulting in detriment or damage. . . ." *Blackhurst v. Transamerica Insurance Company*, 699 P.2d 688, 691 (Utah 1985) (citations omitted). Utah courts have long held that this standard is met when one party accepts the benefit of the bargain and performs under its terms only to later question the validity of the instrument. *See Tanner v. Provo Reservoir Co.*, 289 P. 151, 154 (Utah 1930).

Diatect clearly received the benefits of the bargain from the contract it now claims is illusory. Diatect applied to OMRI to have Diatect V, a pesticide, listed on OMRI's Brand Name Products List. OMRI listed the product in May, 2001, through May, 2004. During this time, Diatect would have been able to attract organic farmers to its products. Dave Andrus, a prominent executive at Diatect, stated in his deposition that Diatect not only used the "OMRI Listed" certification mark on informational fliers they distributed and on their website, they also used OMRI's seal to label their products. Moreover, when OMRI delisted Diatect V because Diatect failed to provide critical information, Diatect took advantage of the Operating Manual's time extension and appeals provision to challenge the de-listing. Despite following the appeals

process, Diatect never filed any substantive document that would illustrate that the de-listing was erroneous.  Just as the *Tanner* court noted, Diatect may not challenge the validity of the agreement from which it received benefits now that it has become legally expedient to do so.  Therefore, even though the operating manual may be illusory under both Utah law and Tenth Circuit law, this Court must enforce its provisions.

For the foregoing reasons, the forum selection clause that requires all suits against OMRI to be litigated in Lane County, Oregon should be enforced.  Accordingly summary judgment is GRANTED.

DATED this 6th day of March, 2007.

_____
J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE